UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------

| | : | |
|---|---|---|
| LINDA M. HINES, | : | CASE NO. 1:18-cv-786 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER<br>[Resolving Docs. 20, 21] |
| UNUM LIFE INSURANCE COMPANY<br>OF AMERICA, | : | |
| Defendant. | : | |

------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Linda Hines seeks benefits payments under a long-term disability plan issued and administered by Defendant Unum Life Insurance Company of America ("Unum"). Defendant Unum denied Hines' long-term disability benefits application and denied Hines' subsequent decision appeal. In its denial, Unum claims that the benefits plan does not cover her vision disability because her disability resulted from a pre-existing condition.

The parties agree that the Unum Plan gives its administrator discretion to determine benefit rights. The parties filed motions for judgment on the administrative record.[1]

For the following reasons, the Court **REVERSES** Unum's benefits denial.

------

[1] Sealed Administrative Record, Doc. 14. The parties filed their opening briefs on August 13, 2018. Pl.'s Opening Br., Doc. 20; Def.'s Opening Br., Doc. 21. The parties filed responsive briefs on September 10, 2018. Pl.'s Opp. to Def.'s Opening Br., Doc. 22; Def.'s Opp. to Pl.'s Opening Br., Doc. 23.

Case No. 1:18-cv-786
Gwin, J.

## I. Background

### A. The Plan

Defendant Unum issued and administered a long-term disability group policy for Plaintiff Hines' former employer (the "Plan").  Plaintiff Hines makes a claim for disability benefits under that Plan.

The Plan does not give disability benefits for disabling conditions that received medical treatment during the three-month period before the employee became covered under the Plan.  Plaintiff Hines became disabled six months after Plan coverage.  She became disabled because of anisometropia, a neurologic condition where the brain becomes unable to mesh the separate images given by each eye.

Within the three-month window period before coverage began, Plaintiff Hines received right-eye cataract surgery.  She says that she successfully completed the cataract surgery and the cataract condition did not disable her and did not cause the later anisometropia condition that disabled her.  Unum argues that the anisometropia condition is somehow related to Hines' cataract surgery.

With this decision, this Court decides whether Unum abused its discretion when it found that the cataract condition that required the September 4, 2013, cataract surgery caused, contributed to, or resulted in the anisometropia condition.

The Plan tells insureds that it "does not cover any disabilities caused by, contributed to by, or resulting from your . . . pre-existing condition."[2]  Under the Plan, "You have a pre-existing condition if:

- you received medical treatment, consultation, care or services including

---
[2] Doc. 14-2 at 27.

Case No. 1:18-cv-786
Gwin, J.

> diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; and
>
> - the disability begins in the first 12 months after your effective date of coverage.[3]

The parties agree that Hines' anisometropia visual processing condition began in the first 12 months of Hines' coverage date. The Court necessarily needs decide if sufficient evidence supported Unum's decision that the cataract condition caused or contributed to the anisometropia condition.

Repeating, Hines became disabled within 12 months of the effective coverage date.[4] This Court needs decide whether Unum abused its discretion when it found that during the three-month period before coverage, Hines "received medical treatment, consultation, care or services, including diagnostic measures," that caused, contributed to, or resulted in her disabling condition. This three-month "look-back period" ran from August 13, 2013 to November 12, 2013.

B. Plaintiff Hines' Medical History

Plaintiff Hines had a slowly developing cataract condition. More in the right eye than the left eye. The right-eye developing cataract diminished her right-eye vision.[5]

Cataract surgery is a common medical procedure. Nothing fancy. In recent years, cataract ophthalmologist have tailored the replacement lenses to correct near-sightedness and far-sightedness.

After testing Plaintiff Hines for the best refractory correction, Plaintiff underwent a

---

[3] *Id.*

[4] Plaintiff Hines' coverage started on November 13, 2013, and her disability commenced on June 12, 2014. Doc. 14-1 at 251, 312.

[5] Doc. 14-1 at 203.

Case No. 1:18-cv-786
Gwin, J.

September 4, 2013 surgery to remove the cataract right-eye lens and replace it with a monovision intraocular lens.[6] Hines' surgeon replaced her right lens with a lens corrected to allow reading. Hines' left eye remained uncorrected for reading and able to be used for distance vision.

Plaintiff Hines experienced some minor post-surgical issues, but these were temporary.[7] Her doctor reported that she was "doing fine"[8] and Plaintiff returned to work. The post-surgery appointments continued until November 26, 2013.[9] After almost three months post-surgery, Hines' right-eye lens implant was stable and well-centered.[10]

Four months later, on April 10, 2014, Plaintiff saw another physician associated with her eye surgeon for redness and pain in her right eye.[11] The doctor reported that the symptoms appeared benign; Plaintiff's ocular exam was "normal" and her retinal exam showed no abnormalities.[12] Concerning her vision, Plaintiff said that she was "bothered by [her] vision in glasses;" her doctor suggested retrying contact lenses.[13]

Eight months after surgery and on May 14, 2014, Plaintiff first complained about blurred vision and difficulty fusing the images from her two eyes.[14] She had not complained regarding an anisometropia condition before. The doctor diagnosed her condition as anisometropia.[15]

---

[6] Doc. 14-1 at 206–207.
[7] *See generally* Doc. 14-1 at 207–17.
[8] *Id.*
[9] Doc. 14-1 at 216–17.
[10] Doc. 14-1 at 216, 218.
[11] Doc. 14-1 at 218–19.
[12] *Id.*
[13] *Id.*
[14] Doc. 14-1 at 48–52.
[15] Doc. 14-1 at 48–52.


Case No. 1:18-cv-786
Gwin, J.

As Plaintiff's other doctors had done since at least August 13, 2013, this doctor also noted that Plaintiff had an early left-eye cataract.[16] No treatment had been recommended to date, and a month earlier Plaintiff had reported that the left-eye developing cataract did not cause her any difficulties with daily living activities.[17] The May 14, 2014 new doctor stated that Hines might require left-eye cataract surgery at an unspecified future time.[18]

On June 5, 2014, Plaintiff applied for short-term disability leave benefits,[19] which did not have a look-back period. Unum granted her application.[20] June 11, 2014 marked her last work day.

Plaintiff's condition worsened in the following months. She applied for long-term disability benefits. Defendant Unum denied her benefits application on October 31, 2014,[21] and it upheld that decision on appeal on December 15, 2014.[22]

In denying Hines' disability application, Unum found Plaintiff Hines disabled from a left-eye cataract and anisometropia. Unum said that the Plan coverage excluded her left-eye cataract as a pre-existing condition because she received consultation or diagnostic services for it during the look-back period.

Regarding the anisometropia, Unum's denial said that Hines did not qualify for coverage because the anisometropia was a pre-existing condition that had been diagnosed and treated during the look-back period. After Hines' appeal, Unum said anisometropia

---

[16] Doc. 14-1 at 48–52.
[17] Doc. 14-1 at 218.
[18] Doc. 14-1 at 51.
[19] Doc. 14-1 at 54.
[20] Doc. 14-1 at 62–63.
[21] Doc. 14-1 at 250–54.
[22] Doc. 14-1 at 311–314.

Case No. 1:18-cv-786
Gwin, J.

was a pre-existing condition because "[t]he results of the [right-eye cataract surgery with monovision intraocular lens implantation] produced monovision resulting in the diagnosis of anisometropia."[23]

## II. Legal Standard

The Employee Retirement Income and Security Act ("ERISA") governs the Plan. The Plan vested the administrator, Unum, with discretion to decide benefits eligibility and construe the Plan terms. Thus, the Court reviews the benefits denial under an arbitrary and capricious standard.[24]

Under the arbitrary and capricious standard, the Court "uphold[s] the plan administrator's decision if it [was] the result of a deliberate, principled reasoning process and supported by substantial evidence."[25] The Court reviews only the evidence available to Unum at the time it made the benefits decision.[26]

## III. Discussion

The Court considers whether Unum's benefits denial was arbitrary and capricious.

Plaintiff Hines argues that Unum used numerous improper criteria to reach the conclusion that the Plan excluded Plaintiff's disabling anisometropia condition from coverage. Plaintiff also argues that her early-stage left-eye cataract was not a disabling

---

[23] Doc. 14-1 at 313.
[24] *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).
[25] *Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015) (internal quotation marks and citation omitted).
[26] *Corey v. Sedgwick Claims Mgmt. Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017) (citations omitted). Because Plaintiff Hines does not bring a procedural challenge to the benefits decision, the Court rejects Defendant Unum's attempt to introduce evidence about Plaintiff Hines' lawsuit against the doctor who performed her surgery, which Unum did not consider in its decisions. See *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 597 (6th Cir. 2012) (explaining that district courts are confined to the record before the plan administrator unless evidence is offered in support of a procedural challenge to the administrator's decision) (citation omitted).

Case No. 1:18-cv-786
Gwin, J.

condition.  She also argues that her anisometropia (disabling condition) was not a pre-existing condition and that her right-eye cataract did not cause her disabling anisometropia condition.

The Court agrees with Plaintiff Hines and addresses her arguments in turn.

### A. The Evidence Does Not Show that Plaintiff's Left-Eye Cataract Was a Disabling Condition

Defendant Unum argues that Plaintiff's early-stage left-eye cataract disabled the Plaintiff and that the Plan excluded it from coverage as a pre-existing condition. No substantial evidence, however, supports Unum's conclusion that the left-eye cataract was a disabling condition. Unum summarizes Hines' medical records as showing only: "[Medical Records received] for 8/13/2013 – 4/10/14 with notes of *trace cataract* in her left eye . . . and there was note of a *trace cataract* in her left eye." (Emphasis added).[27]

Accordingly, because the left-eye cataract could not serve as a basis for denying Plaintiff's benefits application, the Court need not decide whether the Plan would have excluded it from coverage as a pre-existing condition.

Unum relies on the short-term disability benefits form for its conclusion that the left-eye cataract was a disabling condition.  Unum says that Plaintiff's doctor reported an "anisometropia" primary diagnosis and "cataract left" secondary diagnosis,[28] meaning that both were Plaintiff's disabling condition.

The short-term disability form, however, is confusingly written.[29]  The form did not clearly ask Plaintiff's doctor what condition made Plaintiff unable to work.  And Unum's

---

[27] Doc. 14-1 at 15.
[28] Doc. 14-1 at 51.
[29] Doc. 14-1 at 51–52.

Case No. 1:18-cv-786
Gwin, J.

follow-up questionnaire—which *does* clearly ask this question—elicited an unambiguous response: only the anisometropia rendered her unable to work.

> Q: What are the specific physical and/or cognitive findings on which you are basing your decision [to continue to advise Hines to remain out of work beyond August 22, 2014]?
>
> A: Anisometropia[30]

Concerning Plaintiff's then-existing restrictions and limitations, her doctor also responded by describing anisometropia symptoms: "Visual impairment both near and dist[ance]. The problem is using both eyes together. No stereo vision."[31]

Because the substantial evidence does not show that Plaintiff's left-eye cataract disabled her, Plaintiff's benefits could not be denied because of her early left-eye cataract, even if had been a pre-existing condition.

**B.  The Evidence Does Not Support Unum's Decision that Anisometropia Was a Pre-Existing Condition**

No substantial evidence supports Unum's decision that Plaintiff Hines' anisometropia was a pre-existing condition not covered by the Plan.  By relying on eye refraction measurements that Plaintiff's doctor had recorded before her surgery during the look-back period, the first Unum reviewer improperly attributes an "anisometropia" diagnosis to Plaintiff's doctor by arbitrarily conflating the literal definition of anisometropia and its usual meaning in the medical context.

"Anisometropia" literally means a difference in refractive power between the right eye and left eye.  Because individuals rarely have perfect vision in both eyes, most people

---

[30] Doc. 14-1 at 69.
[31] Doc. 14-1 at 69.

Case No. 1:18-cv-786
Gwin, J.

have some refractive differences between their eyes. As a result, doctors typically use the term "anisometropia" to denote *symptomatic* anisometropia—that is, when the refractive differences result in the brain's inability to fuse the separate images from the two eyes. Notably, Unum administrators and doctors, including the first Unum reviewer, seem to recognize that the term usually denotes symptomatic anisometropia, where the brain is unable to fuse images.[32]

Records showing unequal refractive power do not, standing alone, support any finding that Plaintiff had earlier trouble fusing images or earlier trouble seeing double. As noted, most people have some degree of anisometropia. Additionally, the whole point of the monovision surgery was to create these differences in refraction.

The brain usually adapts in a short time to refractive differences between eyes, allowing a person to successfully use one eye for close-up vision and the other for distance vision. This was the expected result for Plaintiff. Plaintiff and her doctor had chosen the monovision intraocular lens implant because Plaintiff had tested a monovision contact lens before the surgery without any difficulty.[33]

Unum's reviewer wrongly concluded that, because Plaintiff's eyes had unequal refractive power between her eyes that Plaintiff's anisometropia had been diagnosed during the look-back period.[34] Also using this misleading meaning, the reviewer concluded that, because the surgery was meant to improve Hines' overall vision (by removing the right-eye

---

[32] For example, in the first reviewer's first response, he stated, "This resulted in symptomatic anisometropia as the result of the brain's inability to fuse images from the right and left eye into coherent stereo vision." Doc. 14-1 at 234. Unum's appeal decision states, "In the case of anisometropia, the brain does not use both eyes together and two images are seen." Doc. 14-1 at 313.
[33] *See, e.g.*, Doc. 14-1 at 303 ("A contact lens had been tried for monovision and the insured was pleased.").
[34] Doc. 14-1 at 243.

-9-

Case No. 1:18-cv-786
Gwin, J.

cataract), the surgery also was meant to address her anisometropia.[35]

Using the term's proper meaning, the evidence actually supports the opposite conclusion. Despite regular appointments since August 2013, the first time doctors report that Plaintiff has anisometropia or any difficulty fusing images is May 21, 2014.[36] This is six months after the look-back period, and nine months after Plaintiff's right-eye cataract surgery. The anisometropia was not a pre-existing condition and thus cannot justify the benefits denial.

### C. The Evidence Does Not Show that Plaintiff's Anisometropia (Disabling Condition) Resulted from Her Right-Eye Cataract (Pre-Existing Condition)

Defendant Unum argues that Plaintiff's right-eye cataract surgery during the look-back period produced monovision that resulted in Plaintiff's anisometropia, and thus that the Plan excluded her anisometropia as a pre-existing condition.[37] The substantial evidence, however, does not show that Plaintiff's anisometropia (disabling condition) "result[ed] from" her right-eye cataract (pre-existing condition). There is a distinction between a *pre-existing condition resulting in a disabling condition* and an *unexpected complication arising after a pre-existing condition treatment* resulting in a disabling condition.

The right-eye cataract (pre-existing condition) could not have directly caused the anisometropia. The September 4, 2013 surgery successfully removed Plaintiff's bad right-eye lens.

Rather, Unum says the *surgery* initiated the causal chain. This is an important

---

[35] Doc. 14-1 at 242–43.
[36] Doc. 14-1 at 50–52.
[37] Doc. 14-1 at 398.

-10-

Case No. 1:18-cv-786
Gwin, J.

distinction. The surgery cannot be a pre-existing condition; it is at most only a necessary consequence of the right-eye cataract pre-existing condition.[38] Replacing the bad lens with a monovision lens, however, was not even a necessary component of that surgery. And Plaintiff's later difficulties with the monovision—difficulties fusing the eyes' images into one—can hardly be said to have been a foreseeable consequence of her right-eye cataract.

There are limits to the chain of causation.[39] The substantial evidence shows that the causal relationship between the right-eye cataract (pre-existing condition) and the anisometropia (disabling condition) is too attenuated.

Plaintiff's doctors reasonably expected that Plaintiff's brain would adapt to the monovision produced by her replacement lens. People usually neuro-adapt to monovision (using one eye for close-up vision and the other eye for distance vision) after a short period.[40] It also appeared that Plaintiff would indeed adapt, given that Plaintiff's trial-run with the monovision contact lens had left her very satisfied.[41] Plaintiff's monovision troubles do not appear to be a reasonably foreseeable consequence of treating the right-eye cataract.

As important, Plaintiff Hines' anisometropia did not show up in the immediate months following the September 4, 2013, surgery.

---

[38] *See Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1000–01, 1008–10 (10th Cir. 2004) (per curiam), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116–17 (2008). *Glenn* rejected *Fought*'s burden-shifting approach applicable when plan administrators operated under an inherent conflict of interest. *See Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192–93 (10th Cir. 2009).

[39] *See Fought*, 379 F.3d at 1000–01, 1008–10 (explaining in a case with very similar policy terms that because surgery is not a pre-existing condition, but at most a necessary consequence of a pre-existing condition, the causal relationship question becomes a matter of line-drawing).

[40] *See* Doc. 14-1 at 234 ("Therefore, one eye will give near vision and the other eye will give far vision. The brain usually accommodates to this after a relatively short time.").

[41] *See, e.g.*, Doc. 14-1 at 303 ("A contact lens had been tried for monovision and the insured was pleased.").

-11-

Case No. 1:18-cv-786
Gwin, J.

After surgery, Plaintiff Hines appeared to be "doing well" and she returned to work. Although she experienced some initial complications, after November 26, 2013 Plaintiff did not meet with doctors for over four months.

May 14, 2014—more than eight months after the surgery—marked the first time that Plaintiff complained to a doctor that she was experiencing blurry vision and trouble fusing images together.

The substantial evidence does not support Unum's decision to deny Plaintiff's benefits based upon some argument that Plaintiff's anisometropia (disabling condition) resulted from her right-eye cataract (pre-existing condition), and thus was excluded under the Plan.

In sum, because the substantial evidence does not support any of the three reasons on which Unum could have denied Plaintiff's benefits application, its benefits denial was arbitrary and capricious and must be reversed.

**D.  Attorney's Fees and Costs**

The Court considers Plaintiff Hines' request for attorney's fees and costs under 29 U.S.C. § 1132(g)(1).

In determining whether to grant this award, the Court evaluates "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions

Case No. 1:18-cv-786
Gwin, J.

regarding ERISA; and (5) the relative merits of the parties' positions."[42] "No single factor is determinative."[43]

Weighing all the factors, the Court finds that they justify an attorney's fees and costs award for Plaintiff Hines. Unum is a large insurance company that can satisfy the award. Plaintiff Hines has prevailed. The relative merits of the parties' positions are not particularly close, especially considering Unum's inherent conflict of interest as the payor and benefits eligibility decider.

The record does not offer a smoking gun revealing Unum's bad faith, but several factors add up to reveal Unum's duty to pay fees. Unum inaccurately represented physician statements,[44] omitted potentially relevant medical information,[45] and followed up with reviewers in such a way as to suggest that they "try again."[46] The Unum reviewers' ambiguous evaluation responses generate even more concern. They largely dance around the questions without providing a principled, reasonable answer and explanation.[47] And

---

[42] *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 861 (6th Cir. 2016) (citation omitted).

[43] *Id.* (citation omitted).

[44] *See, e.g.*, Doc. 14-1 at 242–43 (incorrectly imputing an anisometropia diagnosis to Plaintiff's doctor using flawed reasoning).

[45] *See, e.g.*, Doc. 14-1 at 226 (acknowledging that Plaintiff Hines complained about seeing flashes of crescent lights on November 26, 2013 (after the look-back period and before the anisometropia disability) but failing to mention that this was related to Hines's posterior retinal detachment diagnosis). Plaintiff says that no Unum employee mentioned the posterior retinal detachment diagnosis at any point during the claim process.

[46] Doc. 14-1 at 233–34, 241–43. In response to the Unum doctor's response that Plaintiff's visual problems resulted from the September 4, 2013 surgery, Unum then asked for a clarifying response concerning whether the visual problems were causally related to a condition that the surgery was intended to treat. Doc. 14-1 at 233–34, 241–43. The Unum doctor then responded differently. He provided a clear "yes" answer, but then curiously gave an explanation that provided no support for a causal relationship. Doc. 14-1 at 241–43.

[47] *See supra* note 46. The first reviewer provided the following explanation to the follow up question seeking clarification as to whether there was a causal relationship between symptoms treated during the look-back period and Plaintiff's disabling condition. The reviewer uses the two meanings of "anisometropia" in the same paragraph without clarification. And despite answering "yes" to the causation question, the reviewer provides no indication that there was actually a causal relationship, as opposed to a temporal one:

> Current lack of capacity is based on anisometropia. Ms. Hines had a right eye lens implant on 09/04/2013 for correction of a significant right eye cataract and to improve overall vision, including anisometropia. However, vision is now worse. Uncorrected right eye acuity is now 20/400 and there persists lack of capacity to use both eyes together resulting in no stereo vision. This degree of anisometria is commonly associated with headaches

Case No. 1:18-cv-786
Gwin, J.

yet Unum was still able to cherry-pick language and carry on with its preferred course of action.

An attorney's fee award would effectively deter Unum and other insurance companies from similar conduct going forward. The litigated issues are common in ERISA benefits denial cases.

The fourth factor weighs against Plaintiff because she did not confer a common benefit on all Plan participants or resolve significant legal questions regarding ERISA.

Overall, these considerations support an award to Plaintiff Hines for attorney's fees and costs, in addition to the benefits amount owed to her under the Plan.

## IV.  Conclusion

For the reasons stated, the Court **REVERSES** Unum's benefits denial and **AWARDS** Plaintiff Hines reasonable attorney's fees and costs.

IT IS SO ORDERED.

Dated:  December 17, 2018               *s/        James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE

---

and significant eye discomfort.
Doc. 14-1 at 328.  The Unum appeal reviewer provided a similarly unhelpful response. The only causal explanation was: "The results of the procedure produces monovision resulting in the diagnosis of anisometropia." Doc. 14-1 at 303.

-14-